William B. Jones, U. S. Atty., Louisville, Ky., for plaintiff.

Irwin G. Waterman, David L. Waterman, Louisville, Ky., for defendant.

**UNITED STATES of America, Plaintiff,**

v.

**INTER-STATE CONSTRUCTION COMPANY, Inc., Defendant.**

**Civ. A. No. 3804.**

United States District Court
W. D. Kentucky,
at Louisville.

Feb. 16, 1961.

SHELBOURNE, District Judge.

The Government instituted this action June 10, 1959, to obtain a judgment against Inter-State Construction Company, Inc., for alleged tax liabilities assessed and claimed to be due under the provisions of the Federal Insurance Contributions Act for the period from April 1, 1953, through June 30, 1956, and under the Federal Unemployment Tax Act for the years 1953, 1954, and 1955. The taxes were assessed by the Government on the theory that the workers engaged in the performance of the defendant's contracts with property owners were employees within the meaning of the two Acts and not independent contractors.

The defendant denied that the Government was entitled to any relief, and asserted that the sub-contractors and applicators performing its contracts, each and both, were independent contractors and

in no wise employees within the meaning of the Acts.

The case was tried to the Court without a jury June 16, 1960, and subsequently submitted on briefs.

### Findings of Fact

The Court makes the following findings of fact:

1. During the periods for which employment tax assessments were made, defendant was engaged in the home improvement business in the Louisville area. The activities of this business consisted of the construction of home repairs, room additions, porch enclosures, and similar light construction, and in the installation and application of aluminum siding on houses. Contracts for the work were obtained by salesmen and submitted to the home office. The defendant employed no regular salaried personnel to perform these contracts. The actual work was done by light construction sub-contractors, who performed the home repair and remodeling contracts, and applicators, who installed and applied the aluminum siding.

From February, 1955, to March, 1957, Robert Fred Cope was employed by defendant as an expediter with respect to its contracts. His duties related to the award of sub-contracts and the selection of applicators. He occasionally visited job sites and made suggestions concerning the work in progress but he had no authority to direct the work or give instructions to the workers.

2. Companies and individuals interested in obtaining sub-contracts contacted defendant and when a job was to be performed three or four of them were notified to inspect the job site and make a flat bid, including labor and materials, for the job. The sub-contracts were awarded on the lowest and best bid basis. Payment to the sub-contractor was made by defendant upon completion of the work and after a completion slip was obtained from the property owner showing that he was satisfied with the work.

The sub-contractor determined how many helpers would be needed on a job, selected them, and paid their wages; all materials and supplies used in the performance of the work were selected and paid for by him. Wages and bills for materials and supplies were either paid directly by the sub-contractor or by defendant and deducted from the sub-contract price upon final settlement.

3. In the performance of a contract for the installation and application of aluminum siding, defendant selected an applicator and offered him the work. It had no agreement with any applicator obligating it to give him any work. The applicator was free to accept or reject the offer of any job and the rejection of a job did not affect the offer of future jobs.

When an applicator was assigned a job defendant issued him a work order containing the name and address of the owner of the property to be improved and a general statement of the work to be done. All necessary materials were purchased by defendant and delivered to the job site by its trucks. The applicator supplied all of his own equipment, such as ladders and scaffolding, and transportation.

The applicator was paid on a "per square" basis, a square being an area 10 feet x 10 feet. For each such area covered the applicator received a set amount. Where additional help was required on a job, the applicator selected the helpers he needed or obtained another applicator to assist him. The rate of the helpers' pay or division of the money between the applicators was a question they determined for themselves; the defendant had no voice in this matter.

Once an applicator entered upon a job he could not vary his compensation by reason of any difficulties encountered. If added work was needed the actual pay for doing it was negotiated between the applicator and the defendant. If a job was improperly done, the applicator responsible was expected to correct it without additional pay. If he was not available or refused to make the correction, another applicator did the work and was

**944**

paid on the per square basis and the amount was deducted from the amount, if any, due the original applicator. Final payment was made only after the property owner signed a completion slip showing that he was satisfied with the work.

The applicator proceeded with the work without any supervision on the part of the defendant or its employees. There were no deadline for jobs and the applicator determined the working hours on each job.

The applicators selected by defendant to perform its installation and application contracts did not work for it exclusively. Many of them had worked for its competitors when it had no jobs for them.

## Conclusions of Law

Numerous cases involving almost the exact facts of this case have been decided. Most of these cases are listed in the terse and clear opinion in Fleeman v. United States, D.C., 175 F.Supp. 336, written by Judge Weick, now a member of the Court of Appeals for the Sixth Circuit but in 1959 a District Judge in the Northern District of Ohio. No better way of settling the law of the case at bar is known to this Court than to adopt Judge Weick's findings and conclusions, the facts in the two cases being only slightly dissimilar.

A contrary construction of the law was reached in Security Roofing & Construction Co., Inc. v. United States, D.C., 163 F.Supp. 794; Ben v. United States, D.C., 139 F.Supp. 883, affirmed 2 Cir., 241 F.2d 127; Bonded Insulation & Construction Company, Inc. v. United States, D.C., 131 F.Supp. 635.

## Conclusion

It is concluded that the defendant, Inter-State Construction Company, Inc., is not subject to Federal Insurance Contributions Act and Federal Unemployment Tax Act, 26 U.S.C.A. (I.R.C.1939) §§ 1400 et seq., 1600 et seq., 26 U.S.C.A. (I.R.C.1954) §§ 3100 et seq., 3300 et seq. for wages paid to the sub-contrac-

tors, who did the repairs and remodeling, or to the applicators.

The complaint in this action is hereby dismissed and defendant's counsel, on notice to counsel for the Government, will submit judgment accordingly.